UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  13-80162-CR-DTKH/JMH

UNITED STATES OF AMERICA

                        **Plaintiff,**

vs.

SEAN E. WAGNER, et. al.,

                        **Defendant.**
_____/

## DEFENDANT, SEAN WAGNER'S, OBJECTIONS TO PSI REPORT

COMES NOW the defendant SEAN WAGNER, by and through the undersigned counsel and files the following objections to the PSI Report (D.E. #89) submitted in this case and states:

¶ 12.  The report omits an additional company that was extorted by Wayne Kepple: Global Flight Services, LLC, ("GFS") James Murphy's company.  Murphy himself admitted to making payments to Wayne Kepple while he was operating GFS (Case No. 11-80135-CR-JIC. D.E. # 16)

¶ 16.  Mr. Wagner respectfully requests that an additional sentence be added to reflect that he had no knowledge of, nor did he direct Craig Perez to, destroy files that was on Perez' personal computer.  As the facts in ¶16 indicate, Mr. Perez worked for AFI for only a nine month period ending in March 2008.  He did not work at the AFI site in Broward County Florida. Instead he worked from his home in Atlanta, Georgia.  AFI ceased to operate in August 2009.  In 2011 Craig Perez destroyed files on his personal computer after being interviewed by federal agents and was indicted for obstruction of justice. (Case No. 14-41-Whipple/WDMO).  There was no evidence, nor did Perez himself indicate in his debriefings that Sean Wagner had any

1

knowledge or any role in Mr. Perez' decision to remove these files.  As a matter of fact, ¶35 of Mr. Wagner's PSI Report states that "the probation officer has no information indicating that the defendant impeded or obstructed justice."  It is respectfully submitted that as it currently reads, ¶ 16 implies, incorrectly, that the he was involved in this act.

¶¶ 28  The PSI Report asserts that "Wagner was the leader and organizer of this scheme involving his companies and fuel contracts with Ryan, which was extensive and involved at least five participants. He directed and supervised the activities of Murphy and Perez and at least one other unindicted employee. A four level role for leader or organizer is recommended."  The recommendation is contrary to the facts and contrary to the law.

This was a simple scheme that was spawned by the greed of Wayne Kepple of Ryan Air. Kepple extorted every business that dealt with Ryan Airlines through him. Kepple admitted to have solicited kickback payments from these businesses and in some cases, fraudulent invoices from some of these businesses.  Sean Wagner and his businesses were only one of the multiple businesses who went along with Kepple's demands for illegal payments. If there was a leader and manager deserving a a four level adjustment it was Wayne Kepple.  All of the other business owners who paid Kepple have pleaded guilty. With the exception of Sean Wagner, NONE of them has been recommended for a manager/supervisor adjustment under USSG §3b1.1(a)!

**Wayne Kepple.**  Case N0. 11-80170-CR-KLR.  Wayne Kepple was the Vice President of Ground Operations for Ryan International Airlines.  Among his responsibilities was contracting with providers of goods and services on behalf of Ryan and approving the invoices that were submitted by those providers to Ryan for payment.  Kepple has admitted to a gambling and a drug problem and apparently his demand for money was unlimited.  At least as early as January 2005, Kepple began to demand payments to him in exchange for Ryan's business.

The evidence suggests that the first business to agree to Kepple's demands for personal payment in exchange for Ryan's business was **Global Flight Management ("GFM")**, a business owned by **David Chaisson.** GFM provided flight management services to airlines. Between January 2005 and July 2008, Kepple demanded and Chaisson agreed to submit false and fraudulent invoices to Ryan and Kepple approved these invoices for payment. The proceeds of these payments were split between Chaisson and Kepple. Additionally Chaisson made additional kickback payments to Kepple in order to maintain the business relationship between Ryan and GFM.

Beginning in October 2005, Kepple demanded kickback payments in order for **Aviation Fuel Services ("AFS")** to acquire business from Ryan. AFS was a fuel reseller that would sell fuel to airlines at various airports around the world. Defendant **Sean Wagner** owned AFS. Later in 2006, Sean Wagner formed another company, **Aviation Fuel International ("AFI")**. AFI was also a fuel reseller and gradually, AFS was transitioned away from selling fuel to selling other ancillary supplies and services to the aviation industry. Kepple solicited the same kickback payments from AFI that he was receiving from AFS.

Beginning in March 2006, Kepple demanded kickback payments in order for **AirServices Inc.** to acquire Ryan's business for ground security and ground services coordination. AirServices was owned and operated by **Robert Riddell**. Kepple demanded and Riddell agreed that AirServices would submit false and fraudulent invoices that Kepple would approve for payment. The proceeds of these payments was split between Riddell and Kepple. In addition, Kepple demanded kickback payments from Riddell/AirServices in order to maintain the business relationship between AirServices and Ryan.

In August 2008, Kepple demanded that **Global Flight Services, LLC ("GFS")** make kickback payments to him in order for GFS to acquire Ryan's fuel business. GFS was owned by **James Murphy**, the former accountant at AFI/AFS.

**David Chaisson (Global Flight Management)**, Case No. 11-80136-CR-COHN. From as early as 2005 and continuing for over three years Kepple admits that he solicited money from Chaisson, on behalf of Chaisson's company Global Flight Management. (US v. Kepple, Case No. 11-80170-Cr-Ryskamp, D.E. 6, ¶ 4(b). Chaisson agreed to Kepple's demands and Global Flight Management began to submit false and fraudulent invoices for services that were not provided. In return Kepple would continue the contract with Chaisson and Global Flight Management. Chaisson pleaded guilty. **No role adjustment was recommended by either the government or probation.**

**Robert Riddell (AirSecure, Inc.),** Case No. 11-80171-CR-KLR. Robert Riddell owned and operated AirSecure, Inc. From March 2006 until August 2009, Kepple solicited and approved fictitious invoices submitted by AirSecure, Inc. Additionally, Kepple solicited kickbacks from Riddell and AirSecure Inc. Riddell pleaded guilty. **No role adjustment was recommended by either the government or probation.**

**James Murphy (Global Flight Services, LLC)**, Case No. 11-80135-CR-JIC. James Murphy worked as an accountant for AFI/AFS, the two businesses owned by Sean Wagner. During his time at AFI/AFS he made payments to Kepple as kickbacks for fuel purchases made by Ryan International Airlines, Kepple's employer. In August 2008, he formed a competing fuel reseller and was solicited by Keppel to pay him kickbacks in order to gain business from Ryan. Murphy/Global Flight Services, LLC agreed and did make such payments to Kepple. Murphy pleaded guilty. **No role adjustment was recommended by either the government or**

**probation.** In fact, when it was determined that Murphy had a criminal history of III, (with a resulting Guidelines recommendation of 46-57 months), the government amended the plea agreement to recommend a sentence of 23 months. Half of the sentence recommended by the Guidelines. This was not as a result of substantial assistance in accordance with USSG §5k1.1, but rather was an amendment to the plea agreement. (Case No. 11-80135-CR-JIC, D.E. # 17) The following chart summarizes the sentences that have been issued to other defendants that were involved in the Kepple crime spree.

| Defendant | Case No. | Conduct | Sentence | Role Adjustment |
|---|---|---|---|---|
| David Chaisson | 11-80136-CR-JIC | Owned Global Flight Management and used it to facilitate the fraud. Kepple solicited from Chaisson and Chaisson agreed to submit fraudulent invoices from Chaisson's company. Kepple approved these fraudulent invoices for payment. The proceeds of these payments were split between Kepple and Chaisson. Additionally Chaisson made kickback payments to Kepple in order to maintain Ryan's business. | 16 mos. | 0 |
| Robert Riddell | 11-80171-CR-KLR | Owned AirSecure, Inc. and used it to facilitate the fraud. Kepple solicited from Riddell and Riddell agreed to submit fraudulent invoices from Riddell's company. Kepple approved these fraudulent invoices for payment. The proceeds of these payments were split between Kepple and Riddell. Additionally, Riddell, made kickback payments to Kepple in order to maintain Ryan's business. | 24 mos. | 0 |

| James Murphy | 11-80135-CR-JIC | Worked in AFI/AFS as an accountant and owned Global Flight Services, LLC and used it to facilitate the fraud. During his tenure there he made wire transfers to Kepple on behalf of AFI/AFS for commissions solicited by Kepple.  After his departure from AFI/AFS he formed his own aviation fuel company called Global Flight Services, LLC.  He was also solicited by Kepple to make payments and he did. | **23 mos.** | **0** |

The recommendation of the four-level increase as a manager/supervisor is not only unfair but is also unsupported by the facts.  This was not a complex fraud.  It was a simple extortion scheme where Kepple demanded payment from Wagner and Wagner agreed to pay. Additionally, there were not five or more people acting criminally at the direction of Sean Wagner.  Even the PSI runs out of names when it makes the claim that Wagner supervised Murphy, Perez "and at least one other unindicted employee." (¶ 28) The presumption in the report that "at least one other unindicted employee" equates to three additional ones to make the threshold of "five or more" is misplaced and unsupported by the facts.

Moreover, the four level supervisor/manager adjustment recommendation for Sean Wagner, when other business owners, who did the same thing (or even more)[1] and who did not get this adjustment will lead the Court to an unwarranted sentencing disparity among defendants with similar records who have been found guilty of similar conduct as set forth by 18 U.S.C. §3553(a)(6).

---

[1] In the cases of defendants Chaisson and Riddell there were false and fraudulent invoices submitted to Kepple for approval and payment.  This is a factor that is not present in this case.

6

¶40.  For the reasons set forth above, the +4 role adjustment should be removed.

¶46.  The Total Offense Level should be 21.

¶56.  The correct spelling of the name is "Whitedove."

¶68.  This should read "Western High School" in Broward County.

¶74  The year of the car is 2009 not 2013.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 26, 2014 I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully submitted,

/s/ *James R. Gailey*
James R. Gailey, Esq.
Fla. Bar No.  304832
1210 Washington Avenue
Suite 245
Miami Beach, FL  33139
Tel:     305-532-3254
Facs:   866-676-7967
Email: jgailey@gailey-law.com